**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 12-23-DLB-JGW**

**BANK OF AMERICA, N.A., ET AL.**                                        **PLAINTIFFS**

**VS.**                          **MEMORANDUM OPINION AND ORDER**

**CORPOREX REALTY & INVESTMENT, LLC, ET AL.**                **DEFENDANTS**

**VS.**

**BANK OF AMERICA, N.A.**                          **COUNTERCLAIM DEFENDANT**

* * * * * * * * * * * * * * *

Plaintiff Bank of America, N.A. ("BOA") commenced this action to recover damages for breach of guaranties against Defendant Corporex Realty & Investment, LLC ("Corporex") as guarantor of three allegedly defaulted promissory notes. Originally, in June 2011, BOA filed this action in the Cincinnati Division of the United States District Court for the Southern District of Ohio (Doc. # 1). Corporex filed an Answer and Counterclaim against BOA in August 2011 (Doc. # 4). Thereafter, Chief Judge Dlott granted a Motion to Intervene as Defendants/Counterclaim Plaintiffs by two of the debtors of the allegedly defaulted promissory notes, CPX Olympic Building, II LLC ("CPX Olympic") and CPX Madison Place Office, LLC ("CPX Madison"). At this same time, BOA also filed separate foreclosure actions in this Court against CPX Madison (Civil Action No. 2:11-cv-168) and

1

CPX Olympic (Civil Action No. 2:11-cv-169).[1]

In October 2011, Corporex, CPX Olympic and CPX Madison (collectively, "Defendants/Counterclaim Plaintiffs") filed Amended Counterclaims against BOA (Doc. # 25) alleging (1) breach of the implied duty of good faith and fair dealing; (2) promissory estoppel; (3) breach of contract; (4) breach of fiduciary duty; and (5) conversion.   In November 2011, BOA filed a Motion to Dismiss Defendants' Amended Counterclaims (Doc. # 27).  Shortly thereafter, SMA Portfolio Owners, LLC ("SMA"), who is the assignee of two of the allegedly defaulted promissory notes, was granted leave to be substituted as Plaintiff for the counts pertaining to the guaranties associated with those notes (Doc. # 34).  BOA remains Plaintiff for the third guaranty agreement.

In December 2011, Defendants filed a Motion for Leave to File Second Amended Counterclaims (Doc. # 40).   Defendants seek to add a cause of action for breach of contract due to Plaintiffs' failure to provide Defendants the opportunity to exercise the right of first refusal to purchase two of the promissory notes.  The proposed Second Amended Counterclaims also clarify which counterclaims are against which Plaintiff and whether as counterclaim, affirmative defense or both.  While the motion to dismiss and motion for leave to file second amended counterclaims were being briefed, Chief Judge Dlott sua sponte transferred the case to this Court.  Thereafter, the pending motion to dismiss and motion for leave to file second amended counterclaims were referred to the presiding Magistrate Judge to prepare a report and recommendation with respect to those motions (Doc. # 55).

---

[1] On March 13, 2012, the presiding Magistrate Judge ordered that these cases be consolidated with the current case for discovery purposes only (Doc. # 63).

2

This matter is currently before the Court on the Magistrate Judge's Report and Recommendation (R&R) entered on March 22, 2012 (Doc. # 65), Plaintiff BOA's Motion to Dismiss Defendants' Amended Counterclaims (Doc. # 27), Defendants' Motion for Leave to File Second Amended Counterclaims (Doc. # 40), and Defendants' Motion to Strike Declaration (Doc. # 67).  The motion to strike was filed after the Magistrate Judge issued his R&R and therefore was not addressed therein.

In his R&R, the Magistrate Judge recommends granting in part and denying in part Plaintiff's Motion to Dismiss and denying Defendants' Motion for Leave to File Second Amended Counterclaims.  Defendants timely filed objections to the R&R (Doc. # 70), to which Plaintiff BOA has responded (Doc. # 81).  Oral argument was held on June 6, 2012 in Covington.  Having considered the entire record and for the reasons set forth below, Defendants' Objections (Doc. # 70) are hereby **sustained in part and overruled in part**, and the Magistrate Judge's R&R (Doc. # 65) is hereby **granted in part and denied in part**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

In May 2003, CPX Olympic executed a promissory note in the original principal amount of $11,000,000 in favor of LaSalle Bank, N.A. ("LaSalle").  The amount of that note subsequently increased to $11,250,000.  The maturity date for the CPX Olympic loan as last amended in the loan documents was February 1, 2011.  In October 2006, CPX

---

[2]  In their objections, Defendants claim that the Magistrate Judge ignored several factual allegations contained in their proposed Second Amended Counterclaims.  Furthermore, BOA claims that Defendants have alleged facts in their objections that are not actually pled in their proposed Second Amended Counterclaims.  Indeed, BOA attached an exhibit to its Reply to Defendants' Objections (Doc. # 81, at 33-35) in which it lists factual statements contained in Defendants' objections but not contained in the proposed Second Amended Counterclaims.  Accordingly, the Court includes a thorough recitation of the facts alleged in the proposed Second Amended Counterclaims, which must be accepted as true at the motion to dismiss stage, and will not rely on the statement of facts as set forth in the Magistrate Judge's R&R.  *See Block v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).

Madison executed a promissory note in the principal amount of $33,500,000 in favor of LaSalle.  The maturity date for the CPX Madison loan as set forth in the original note was October 31, 2011.  In January 2008, CPX Tampa Gateway OPAG, LLC ("CPX Tampa") executed a promissory note in the original principal amount of $9,740,000 in favor of LaSalle.[3]  The maturity date for the CPX Tampa loan as set forth in the original note was February 1, 2011, subject to two one-year extension options thereafter.  Corporex executed limited guarantees in favor of LaSalle regarding each of these loans.

All three loans have been and remain "performing," meaning that all monthly principal and interest payments, at the non-default rates, have been and continue to be paid. (Doc. # 40-1, at ¶ 11).  Revenues generated from operations have been and continue to be sufficient to operate the properties and to cover the debt service.

In August 2009, due to the severe economic downturn in the United States and in light of the upcoming loan maturity and debt coverage ratio measurement dates, CPX Madison and Corporex initiated discussions with BOA.  However, BOA indicated that any modification of the existing loan structure would require an appraisal of the property and advised that the parties should hold off on discussions given the state of the economy and its adverse effect on commercial real estate valuations at that time.  BOA assured CPX Madison and Corporex that it would work with them to modify and extend the loan once the economy improved.  CPX Madison and Corporex relied upon BOA's recommendation and promise and did not have the property appraised or further seek a loan modification or extension at that time.

_____

[3] CPX Tampa is not a party to any of the cases pending before the Court.

4

Subsequently, in mid-2010, CPX Madison and Corporex again approached BOA to discuss the CPX Madison loan. CPX Madison was required to meet a debt coverage covenant as of August 31, 2010 and told BOA that it would likely not be able to meet the test. BOA recommended having an appraisal done and, knowing that the appraisal would likely provide a low valuation, told CPX Madison and Corporex that as long as the property was not in excess of 100% loan to value, it would "work around" the upcoming debt coverage test. (*Id.* at ¶ 31). CPX Madison relied upon BOA's recommendation and promise and therefore cooperated with BOA in obtaining an appraisal of the property. On June 30, 2010, BOA obtained an appraisal that indicated the "As Is" value of the property was $32,000,000 and the "As Stabilized" value was $41,900,000, well in excess of the outstanding loan balance. (*Id.* at ¶ 33). Either way, the property was not in excess of 100% loan to value, meeting BOA's stated requirement to "work around" the upcoming debt coverage test. (*Id.*). However, just a few days before the cut-off date for the August 31, 2010 debt coverage covenant test, BOA informed CPX Madison and Corporex that, contrary to its earlier promise, BOA would be unable to waive the coverage test and that CPX Madison and Corporex would be expected to "right size" the loan in accordance with the existing loan documents. (*Id.* at ¶ 34). According to Defendants, this was the start of a pattern of "bad faith, commercially unreasonable conduct" by BOA. (*Id.* at ¶ 35).

The CPX Olympic loan had a maturity date of October 31, 2010. In light of the impending maturity, CPX Olympic and Corporex had secured a proposal to refinance the loan with another lender by August 2010. They informed BOA of the proposal, but BOA told them to hold off on pursuing this refinance. BOA directed them to do so because it was interested in the cash flow from the CPX Olympic property being available to use as

5

security in connection with contemplated extensions and modifications of the CPX Tampa and/or CPX Madison loans, which funds were not otherwise available under the current loan structure, and as inducement for a hedge fund to buy a portfolio of loans of which the CPX Olympic property would be a part.  To that end, BOA agreed to a 90-day extension on the CPX Olympic loan until February 1, 2011, which was also the stated maturity date for the CPX Tampa loan.  Additionally, BOA required that any extension for the three loans be negotiated together, even though they were three separate loans with no cross-collateralization.  Relying on BOA's promises to work with CPX Madison and Corporex to modify and extend the CPX Madison loan and work around the debt coverage test, and in light of BOA's direction regarding the CPX Olympic loan, CPX Olympic and Corporex did not further pursue a refinance of the CPX Olympic loan with a different lender.

BOA asked the borrowers and Corporex to put forth a proposal respecting extensions for all three loans.   On September 8, 2010 borrowers and Corporex provided their first of many extension proposals to BOA.  On October 25, 2010, BOA sent a letter to CPX Madison and Corporex indicating that CPX Madison had failed to meet the debt coverage covenant and had thirty days to post a letter of credit, deposit funds or pay down the loan in the amount of $4.54 million.  CPX Madison and Corporex then immediately contacted BOA and were told that the letter was merely "a matter of procedure and the Bank does intend to respond to [their] proposal." (*Id.* at ¶ 43).  Finally, on November 1, 2010, BOA sent borrowers and Corporex three term sheets for the three loans and threatened that "obviously, time is of the essence given the upcoming date for the right to cure in the default letter issued on October 25, 2010 for the [CPX Madison property]." (*Id.* at ¶ 44).

6

Shortly thereafter, on November 16, 2010, CPX Olympic and Corporex again discussed the refinancing of the CPX Olympic loan with another lender, but BOA told them to speak instead with BOA's work-out group because it would have "more flexibility." (*Id.* at ¶ 46). Reasonably relying on BOA's representation regarding its flexibility and its promise to work with them, they again did not pursue alternate financing. Then, instead of responding to borrowers' and Corporex's second proposal, on December 1, 2010, BOA delivered a default letter respecting the CPX Madison loan demanding that Corporex immediately pay all sums due to BOA under the guaranty. Later, on March 1, 2011, BOA delivered default notices to CPX Tampa and CPX Olympic, on the ground that the loans were not repaid by their maturity date of February 1, 2011. Negotiations to extend the loan maturity dates continued until June 2011 when BOA proposed significant new terms that materially altered what the parties had agreed to previously, and the parties failed to reach an agreement regarding the extensions of the loans.

According to Defendants, BOA engaged in a "pattern of bad faith conduct" in which it would "first agree to certain terms, thereby inducing [Defendants] to make additional concessions, and then would sit on [Defendants'] response, responding thereafter stating that [BOA] would accept [Defendants'] concession, but in the end would not honor the terms [BOA] had earlier stated it would agree to." (*Id.* at ¶ 13). Finally, BOA agreed to extensions of the three loans as outlined in terms sheets drafted by BOA, "but then reneged on that agreement when [Defendants] would not agree to new terms injected into the documents by [BOA] at an arbitrarily contrived eleventh hour ... ." (*Id.*).

Defendants claim that BOA never intended to extend the loans, but instead "acted to keep the existing, imminent maturity dates in order to position the loans for sale to a

7

buyer who would likely then push to wrest the properties from the Borrowers." (*Id.* at ¶ 35). Indeed, after may promises to modify and extend the loans, BOA ultimately refused to execute agreements to that effect and have since offered all three loans for sale as part of a portfolio of loans and have sold two of the loans to a hedge fund.

According to Defendants, BOA has disclosed CPX Madison and CPX Olympic's confidential leasing information.  Pursuant to the loan documents, the borrowers and Corporex provided BOA with confidential leasing information respecting the lease terms with tenants in the CPX Olympic and CPX Madison properties.  The leasing information provided to BOA was not information that was generally available to the public but was proprietary and confidential in nature.

After negotiations ceased, BOA initiated this action on June 30, 2011.  On or about September 27, 2011 BOA assigned the CPX Tampa promissory note, and all other documents and instruments evidencing, securing or otherwise relating to the loan, to SMA. (Doc. # 31, at 2).  On or about September 29, 2011, BOA assigned the CPX Olympic promissory note, and all other documents and instruments evidencing, securing or otherwise relating to the loan, to SMA.  (*Id.*).

## II.   ANALYSIS

### A.   Standard of Review

Objections to a magistrate judge's report and recommendation are reviewed d*e novo.* 28 U.S.C. § 636(b)(1).  The district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id.*  In the instant action, Defendants object to the Magistrate Judge's recommendation that Counts I-IV of Defendants' Amended Counterclaims be dismissed and that Defendants'

8

motion for leave to amend be denied.[4]  The Court will address each objection in turn.

One initial matter deserves brief comment.  In his R&R, the Magistrate Judge found that no material difference existed between Kentucky and Ohio law regarding the issues before the Court.  Therefore, he did not conduct a further choice of law analysis and cited applicable law from both states.  At oral argument, the Court inquired whether the parties had any objections to the Magistrate Judge's finding in this respect.  Counsel agreed that there is no material difference between Kentucky and Ohio law and did not object to the consideration of the laws of both states in adjudicating the pending motions.

**B.    The Releases**

The Magistrate Judge recommends that Counts I and II (breach of covenant of good faith and fair dealing and promissory estoppel) of Defendants' Counterclaims be dismissed because they are barred by written releases entered into during the negotiation of extensions or modifications of the promissory notes.   In pertinent part, each release provides:

> Each party hereto hereby completely, irrevocably and unconditionally releases and forever discharges the other party from any and all liabilities, claims and demands whatsoever, in law or in equity, which such releasing party now has or may hereafter have against the other party caused by or arising out of or relating to all or any Loan Communications ....

(Doc. # 28-10, at 3, 8, 12).  Loan Communications are defined in the releases as "[a]ny discussions, negotiations, correspondence and other communications relating to the Loan and the Loan Documents that Borrower, Guarantor and/or their representatives may have

---

[4] The Magistrate Judge also recommends that Plaintiff's motion to dismiss be denied with respect to Defendants' conversion claim (Count V).  At oral argument, counsel indicated that the parties have reached a settlement agreement regarding the conversion claim.  Accordingly, the Court need not address Count V as the parties have settled that Count.

previously had, or in the future may have, with representatives of Lender ... ." (*Id.* at 3, 7-8, 11-12).  Despite being referred to as releases by BOA, the "releases" are actually letters from BOA to William S. Butler, CEO of CPX Madison/President of CPX Tampa/President of CPX Olympic/Chairman and CEO of Corporex.  (*Id.*).  Butler signed all three letters on behalf of the CPX entities and Corporex but no representative of BOA signed the letters regarding the CPX Tampa and CPX Olympic loans.  Following oral argument before the Magistrate Judge, counsel for BOA submitted a declaration and provided copies of the CPX Tampa and CPX Olympic releases signed by a representative of the bank.[5]  (Doc. # 64).  Defendants argue that the releases should not be considered at the motion to dismiss stage because they were not referenced in Defendants' Counterclaims or central to their claims.

Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings.  *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  When resolving a motion to dismiss, then, a district court is limited to matters formally contained in the pleadings.  However, "[i]f referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) (quoting *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)); *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)) (A court may consider "exhibits [attached to the complaint], public records, items appearing in the record of the case and exhibits attached

---

[5] Defendants have filed a Motion to Strike (Doc. # 67) counsel's declaration which is currently pending before the Court.

to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.").

Despite the general rule that documents outside or not referred to in the pleadings may not be considered in a motion to dismiss unless referred to in the complaint and central to the claims therein, the Magistrate Judge considered the releases concluding that "[w]here the plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading." (Doc. # 65, at 8) (quoting *Superior Care Pharmacy Inc. v. Medicine Shoppe Int'l, Inc.*, No. 2:10-cv-207, 2011 WL 597065, at *12 (S.D. Ohio Feb. 10, 2011)).  However, any reliance on this case is misplaced because it is factually distinguishable from the current case before the Court.  In *Superior Care*, the court determined that it could consider a release in adjudicating a motion to dismiss because the amended complaint specifically *referenced* the release, and the plaintiff sought rescission of the release as part of the relief sought. 2011 WL 597065, at *12.

The R&R also relied on a Second Circuit case, *Yak v. Bank Brussels Lambert*, 252 F.3d 127 (2d Cir. 2001), which held that a district court could consider a document when ruling on a motion to dismiss if the document was "integral" to the complaint and plaintiff had notice of it, even though plaintiff "[c]arefully avoid[ed] all mention" of the document. 252 F.3d at 130-31.  The R&R concluded that the releases were "integral" to the counterclaims because they are "directly relevant" to the resolution of the counterclaims.  (Doc. # 65, at 8).  Defendants contend that the R&R misinterpreted the holding in *Yak* to not only allow consideration of documents integral to a plaintiff's complaint (or, in this case, Defendants'

counterclaims) but also documents integral to a party's defenses to the complaint (or, in this case, counterclaims).

Shortly after the *Yak* decision, the Second Circuit clarified its rule regarding when documents not incorporated by reference may be considered in adjudicating a motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). "Because this standard has been misinterpreted on occasion," the court reiterated that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in the original); *see also Maloney v. CSX Transp., Inc.*, No. 1:09-cv-1074, 2010 WL 681332, at *3 (N.D.N.Y. Feb. 24, 2010) (finding that releases could not be considered on a motion to dismiss when the complaint is devoid of any reliance on them). The Court emphasized that a document is "integral" to the complaint when the complaint "relies heavily upon its terms and effect." *Id.* (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

Recently, in *Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 400 (6th Cir. 2012), the Sixth Circuit cited *Chambers* with approval and recognized that documents not attached or incorporated by reference in the complaint may be considered where the documents are integral to the complaint.  672 F.3d at 400. However, given that the complaint (or, in this case, counterclaims) must rely upon the terms and effect of a document in order for it to be "integral" and thus appropriate to consider on a motion to dismiss, the Magistrate Judge's conclusion that the releases were "directly relevant" to the resolution of the counterclaims failed to meet this standard.  As Defendants argue, the Counterclaims do not refer to the releases, and Defendants did not rely upon the

12

releases in drafting their claims.  The releases are only central to BOA's defenses to the Counterclaims.

BOA argues that other courts have found that a release is "integral" to a party's claim, because, where claims have been released, the existence of the release bears on the party's ability to maintain the action.  In support of this proposition, BOA cites *Willis Corroon Corp. of Utah, Inc. v. United Capitol Ins. Co.*, No. 97-2208, 1998 WL 30069, at *3 (N.D. Cal. Jan. 5, 1998).  In *Willis Corroon*, the court found that a settlement agreement not attached to the complaint could be considered in deciding a motion to dismiss.  1998 WL 30069, at *3.  While the court determined that the settlement agreement was clearly "central to [plaintiff's] ability to bring [the] action since the agreement is a binding contract which allegedly limits the parties' right to sue," it concluded that the settlement agreement may be considered because plaintiff *referred to and relied upon* the agreement in the complaint.  *Id.*  Since Defendants have not referred to or relied upon the releases in their Counterclaims, BOA's reliance on this case is misplaced.

BOA also relies on *Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997) for the proposition that it may introduce certain documents even if Defendants failed to reference them in the Counterclaims.  In *Weiner*, an ERISA case, the court found that certain group health plan documents, under which plaintiff was claiming benefits, could be considered on a motion to dismiss even though plaintiff did not attach the documents to her complaint.  108 F.3d at 89.  The court determined that the plan documents were incorporated through plaintiff's reference to "the plan" and were central to her claim that she was entitled to recover benefits under the plan.  *Id.*  Once again this case is factually distinguishable from the present case.  In *Weiner*, the plaintiff specifically referred to the plan in her complaint

13

and relied upon the plan in forming her claims.  As stated above, in the instant case, Defendants never reference the releases or rely upon any terms contained therein to formulate their claims.

Therefore, the Court finds that it may not consider the releases that BOA attached to its motion to dismiss, and it was inappropriate for the Magistrate Judge to do so.[6] Defendants' objections are sustained, and the R&R is overruled in part.  Given the Court's ruling on this matter, it need not determine whether the Magistrate Judge's consideration of BOA's counsel's declaration and submission of the fully executed releases (Doc. # 64) was proper.  Consequently, Defendants' Motion to Strike (Doc. # 67) BOA's counsel's declaration is denied as moot.

### C.    Breach of the Implied Duty of Good Faith and Fair Dealing

The Magistrate Judge viewed Defendants' breach of the implied duty of good faith and fair dealing counterclaim as one accusing BOA of "inserting deal-breaking clauses into the loan reworking negotiations at the eleventh hour." (Doc. # 65, at 10).  In addition to being barred by the releases, the Magistrate Judge found that the covenant cannot be invoked to defeat a party's contractual rights.  Since BOA acted in accordance with its contractual rights by seeking to foreclose on the properties and recover on the guaranties, the mere fact that BOA proposed terms to rework the loans which were not agreeable to Defendants does not give rise to a claim for breach of the covenant of good faith and fair

---

[6] Furthermore, despite the fact that the R&R stated that Defendants do not dispute the veracity or applicability of the releases to their claims, Defendants, on more than one occasion, have raised issues with the validity and enforceability of the releases, specifically that the releases were obtained through bad faith and misrepresentations.  *See* (Docs. # 60, at 8; # 66, at 52-29).  At the very least, Defendants should be afforded an opportunity to take discovery and present evidence concerning the validity and enforceability of the releases.

dealing.  Therefore, he recommends dismissal of this claim.

Defendants contend that the Report erroneously ignored Defendants' factual allegations of BOA's bad faith conduct.  Defendants argue that this is not simply a case of failed negotiations.  Rather, BOA strung Defendants along with false promises in order to get the loans in default and sell them as part of a larger portfolio of loans, free and clear of Defendants' rights of first refusal.  Defendants also claim that the Magistrate Judge improperly weighed the factual allegations of BOA's bad faith.  Specifically, they take issue with the R&R's conclusions that (1) Defendants offered nothing to "buttress" the allegation that BOA had decided months before the loans matured that it wanted them to be in maturity default so it could sell them to a third-party free of the rights of first refusal; and (2) the factual history alleged by Defendants was "illogical."  Additionally, Defendants argue that the R&R indulged in inappropriate factual speculations, because the Court is required to accept the factual allegations as true when deciding a motion to dismiss.  Finally, Defendants assert that the R&R ignored standard law that a material breach by one party excuses performance by the other party.

Every contract contains an implied covenant of good faith and fair dealing and thus "impose[s] on the parties thereto a duty to do everything necessary to carry [out the contract]."  *de Jong v. Leitchfield Deposit Bank*, 254 S.W.3d 817, 823 (Ky. Ct. App. 2007) (quoting *Farmers Bank & Trust Co. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005)); *see also Littlejohn v. Parrish*, 839 N.E.2d 49, 54 (Ohio Ct. App. 2005) (concluding that public policy dictates that every contract contain an implied duty for the parties to act in good faith and to deal fairly with each other, which requires not only honesty but also reasonableness in the enforcement of the contract).  However, "[a]n implied covenant of

15

good faith and fair dealing does not prevent a party from exercising its contractual rights." *de Jong*, 254 S.W.3d at 823 (quoting *Farmers Bank & Trust Co.*, 171 S.W.3d at 11); *see also Panagouleas Interiors, Inc. v. Silent Partner Group, Inc.*, No. 18864, 2002 WL 441409, at *7 (Ohio Ct. App. Mar. 22, 2002) (lender did not act in bad faith by exercising contractual rights following a default, despite the pendency of negotiations for a refinance).

As the Restatement Second of Contracts states, "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Littlejohn*, 839 N.E.2d at 54 (quoting Restatement (Second) of Contracts, § 205 cmt. a (1981)).  It also states that bad faith may consist of inaction, or may be the "abuse of power to specify terms, [or] interference with or failure to cooperate in the other party's performance."  *Id.* (quoting Restatement (Second) of Contracts, § 205 cmt. d).

In the present case, Defendants allege that, as of August 2010, BOA never intended to modify or extend the loans but engaged Defendants in negotiation discussions in order to get the loans past their maturity deadlines so they could position the loans for sale to a hedge fund.  Thus, Defendants allege a pattern of intentional dishonesty on the part of BOA that interfered with their ability to perform the contract.  According to Defendants, had they been able to refinance with another lender, they would have never defaulted on the notes.  Moreover, BOA's alleged dishonesty prohibited Defendants from exercising their contractual right of first refusal to buy the notes at a substantial discount.  These facts are sufficient to support a claim for a breach of the implied duty of good faith and fair dealing at the motion to dismiss stage.

Plaintiff argues that even if it acted in bad faith, Defendants claim must fail because BOA had the contractual right to foreclose on the properties.  However, even if a contract expressly permits a course of conduct, a party may still breach the implied duty of good faith and fair dealing if it acts dishonestly or unreasonably in carrying out the contract.  *See Littlejohn*, 839 N.E.2d at 54-55.  If BOA's alleged dishonesty precluded Defendants from carrying out their obligations under the contract or exercising their right of first refusal, BOA could still be liable for a breach despite their right to foreclose on the properties.

One final matter deserves brief comment.  At various times throughout its briefing and at oral argument, Defendants appear to argue that they have not defaulted on the promissory notes and/or guaranties because a material breach by BOA excuses any performance on their part.  Indeed, the Second Amended Counterclaims state that due to its bad faith conduct, BOA and its successors are estopped from claiming that the notes were in default at the time BOA transferred its interests in the notes to SMA.  The Court acknowledges this argument only to note that any determination is premature at this time.  Before the Court addresses this matter, Defendants must prove that BOA did breach the contracts at issue.  Accordingly, this issue will be taken up on summary judgment motions if necessary.

### D. Promissory Estoppel

In addition to being barred by the releases, the Magistrate Judge recommends dismissal of Defendants' promissory estoppel claim because the Counterclaims contain no factual allegation or specification as to what the alleged reliance damages would be. Moreover, the Magistrate Judge noted that the promissory notes, guaranties and releases generally provide that their terms may only be modified in writing and/or that no party may

17

be deemed to have waived any of its contractual rights unless it does so in writing. Given the clear language of the contracts, and the fact that Defendants and BOA are sophisticated commercial entities, the Magistrate Judge concluded that Defendants' reliance upon any alleged oral promises by the Bank should be deemed unreasonable as a matter of law.

Defendants argue that they set forth very specific allegations of damage they suffered due to the BOA's bad faith and their detrimental reliance upon BOA's promises. Specifically, in their Amended Counterclaims, Defendants allege:

> [L]oss of value on the assets owned by [CPX Madison, CPX Olympic and CPX Tampa]; loss of opportunity with tenants and potential tenants; expenses to defend against [BOA's] bad faith claims; loss of refinancing opportunities; lost profits; lost cash; loss of income from tenants; and injury to business reputation. [CPX Olympic] in particular has been forced, due to [BOA's] wrongful actions, to make lease concessions to its largest tenant, which included a reduction of the existing rent obligation by $744,893 and an increase of owner provided tenant improvement allowance of $317,000.

(Doc. #25, at ¶ 78). Although Defendants allege these damages under Count I (breach of covenant of good faith and fair dealing), they expressly incorporate this allegation in Count II (promissory estoppel). Defendants' argument is well-taken. Given the specific damages alleged in the Counterclaims, Defendants have adequately pled reliance damages regarding their promissory estoppel claim.

Defendants also contend that the Magistrate Judge erred in finding that Defendants' reliance on the alleged oral promises by BOA is unreasonable as a matter of law because, as a general rule, no-oral-modification clauses are disfavored in the law.[7]  Thus,

---

[7] BOA asserts that Defendants are precluded from raising this argument because it was never raised before the Magistrate Judge. However, the Court need not address this issue because Defendants' argument is immaterial to the Court's adjudication of this issue.

Defendants assert that BOA should not be allowed to "hide" behind the no-oral-modification clauses in the loan documents and guaranties to protect them from their bad faith conduct. There are ample allegations that BOA, through its conduct, promises and representations, induced Defendants to forego other financing opportunities to continue negotiating with BOA resulting in their being hoodwinked out of their very valuable rights of first refusal. Moreover, Defendants are not seeking to enforce the proposed refinance term sheets that were exchanged by BOA and Defendants during work-out negotiations.   Instead, Defendants' promissory estoppel claim is based upon BOA's promises and representations to Defendants to negotiate in good faith, to work around debt coverage ratios and to be flexible in extending the loans and refinancing.

Promissory estoppel is not a contractual theory but a quasi-contractual or an equitable doctrine designed to prevent damage resulting from reasonable and detrimental reliance upon false representations. *Karnes v. Doctors Hosp.*, 555 N.E.2d 280, 283 (Ohio 1990).  The elements necessary to establish a claim for promissory estoppel are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance. *Stull v. Combustion Engineering, Inc.*, 595 N.E.2d 504, 507 (Ohio 1991).

The R&R alternatively concluded that Defendants' claim should be dismissed because any reliance by Defendants was unreasonable as a matter of law.  Although the reasonableness of the reliance is typically a factual issue for the jury, "a court may deem certain circumstances objectively unreasonable, as when it finds that reasonable minds could come to but one conclusion." *Mansfield Square, Ltd. v. Big Lots*, *Inc.*, No. 08AP-387,

19

2008 WL 5159930, at *4 (Ohio Ct. App. Dec. 9, 2009) (citations and internal quotations omitted). For example, the Ohio Court of Appeals has found that "[r]eliance on a statement of future intent made prior to the conclusion of negotiations in a complex business transaction is unreasonable as a mater of law. Such a rule is particularly appropriate when two sophisticated business entities are involved in negotiations." *Carcorp, Inc. v. Chesrown Oldsmobile-GMC Truck, Inc.*, No. 06AP-329, 2007 WL 259248, at *4 (Ohio Ct. App. Jan. 30, 2007) (citations omitted). Moreover, it is well-settled under Ohio law that courts will give effect to the manifest intent of the parties where the evidence clearly proves that they did not intend an agreement to bind them until the agreement is memorialized in a written document signed by both parties. *Id.* (citing *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 375 N.E.2d 410, 413 (Ohio 1978)).

BOA cites *Mansfield Square, Ltd. v. Big Lots, Inc.*, 2008 WL 5159930 (Ohio Ct. App. Dec. 9, 2008) for the proposition that any reliance by Defendants was unreasonable because the loan documents did not permit oral modifications. However, this case is not applicable to the present case because Defendants are not seeking to enforce the term sheets of the modification/extension negotiations. Defendants agree that those terms are not binding because they were not signed by both parties. To the contrary, Defendants seek to enforce BOA's *promise to negotiate*. Defendants allege that BOA promised to negotiate in good faith an extension or modification of the loan agreements and directed them to forego refinancing with another lender. In reliance on BOA's promise, Defendants did not pursue refinancing with another lender. As stated above, refinancing with another lender would have allegedly allowed Defendants to carry out their obligations of the contract. The promissory notes did not address loan extension or modification

20

negotiations, besides to say that any extension or modification must be in writing and signed by all parties.   Therefore, an oral agreement *to negotiate* did not expressly contradict any terms of the promissory notes, and it was not per se unreasonable for Defendants to rely on BOA's promise to negotiate in good faith.   Consequently, Defendants' objections regarding Count II are sustained, and the R&R is overruled in part.   Plaintiff's motion to dismiss is denied in this respect, as Defendants have adequately pled a claim for promissory estoppel.

### E.   Breach of Contract–Disclosure of Confidential Information

The Magistrate Judge recommends that Defendants' Count III (Breach of Contract) should be dismissed as having been inadequately plead.   Count III alleged that BOA breached its contractual obligations to CPX Olympic and CPX Madison "by providing their confidential leasing information to third-party businesses in the Tri-State area." (Doc. # 25, at ¶ 84).   Moreover, Defendants claimed that CPX Olympic and CPX Madison "have been harmed by BOA's inappropriate disclosures and are entitled to damages in an amount which shall be proven at trial." (*Id.*).   The Magistrate Judge concluded that this Count "is the sort of conclusory, 'unadorned, the-defendant-unlawfully-harmed-me accusation' which the Supreme Court held insufficient in *Ashcroft*." (Doc. # 65, at 13) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   Additionally, the Magistrate Judge found that the damages claim was also fatally conclusory.

Defendants argue that the R&R ignores facts actually alleged by the Defendants in their Amended Counterclaims, namely: (1) Per the loan documents, BOA had a duty not to share the Defendants' confidential leasing information, except only with potential buyers of the debt; (2) That leasing information was proprietary and confidential and not generally

21

available to the public; (3) BOA disclosed this confidential leasing information not just to potential third-party purchasers of the loan, but to third-party real estate brokers in the Tri-State area; and (4) The exposure of this information to the public would result in significant economic harm to Defendants.  Defendants assert that the reason for such harm, implied in the pleadings, is that third-party brokers in the Tri-State area are often negotiating with Defendants on behalf of prospective tenants.  Thus, the disclosure of existing confidential lease terms gives those brokers an unfair competitive advantage against Defendants, which is a concrete harm and sufficient to state a claim.

In their response to BOA's motion to dismiss, Defendants allege that BOA's disclosure of confidential leasing information respecting the lease terms with the tenants in the CPX Olympic and CPX Madison properties was in breach of Section 8.9 of the promissory notes.  Section 8.9 provides: "Borrower acknowledges and agrees that Lender may share information about the Borrower, in a commercially appropriate manner, with any of its subsidiaries or affiliates or their successors or any purchasers or potential purchasers of the Note evidencing the Loan."  (Doc. # 1-1, at 14).  Thus, Section 8.9 *allows* BOA to share *information about the Borrower* with *any potential purchasers* of a note, if it is done in a *commercially appropriate manner*.  However, Section 8.9 does not *prohibit* BOA from disclosing *confidential leasing information* to *third-party brokers*.  Defendants' assertion that, per Section 8.9, BOA had a duty not to share Defendants' confidential leasing information, except with potential buyers of the debt, is therefore incorrect.  That provision simply does not address BOA's duties concerning disclosure of the leasing information. Defendants have not identified any other provision contained in the loan documents that actually prohibits the disclosure of confidential leasing information respecting the lease

22

terms with the tenants in the CPX Olympic and CPX Madison properties.[8]   Accordingly, Defendants have failed to plead a breach of any contractual obligation, and Count III is dismissed.

However, even if Defendants adequately alleged a breach of contract, Defendants failed to adequately plead damages as a result of the breach.  Defendants claim that the exposure of the confidential leasing information to the public "would result in significant economic harm" to the borrowers and Corporex and that CPX Olympic and CPX Madison were in fact "harmed" by BOA's in appropriate disclosures.  (Doc. # 25, at ¶¶ 72, 85).  In their objections, Defendants state that the reason for such harm is "implied" in their pleadings, namely that the disclosure gives the third-party brokers "an unfair competitive advantage against Defendants." (Doc. # 70, at 30).  Moreover, Defendants assert that they are not required at the motion to dismiss stage to state the dollar amount of the harm caused by BOA's disclosure.

Despite Defendants' later explanation of alleged damages in their objections, the amended counterclaims do not specify the harm they allegedly suffered as a result of BOA's disclosure of confidential leasing information.  As stated above, federal pleading standards require more than "an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678.  Defendants cannot merely plead facts from which damages may be implied, but rather Defendants are required to identify what those damages actually are.   "Merely claiming to have suffered damages, without more,

---

[8]  Indeed, Defendants' objections make clear that they are not claiming a breach of Section 8.9, but some other unidentified or extra-contractual duty.  Defendants argue that whether the alleged disclosure was commercially appropriate or not is irrelevant because the information was disclosed to third-party brokers, not the potential note purchasers referenced in Section 8.9.  As BOA asserts, this argument is self-defeating because Section 8.9 only addresses disclosures to potential note purchasers.

epitomizes conclusory pleading" and is insufficient. *Eichholz v. Wells Fargo Bank, N.A.*, No. 10-cv-13622, 2011 WL 5375375, at *5 (E.D. Mich. Nov. 7, 2011). Furthermore, even if the Court considered Defendants' *implied* damages, i.e., the disclosure gives third-party brokers' an unfair competitive advantage against Defendants, that allegation is also insufficient because it fails to constitute an actual harm until a party has taken advantage of the confidential information to Defendants' detriment. Nowhere in their Counterclaims have Defendants alleged that any third-party brokers actually used this information against them. Consequently, Defendants' objections to Count III are overruled, and this claim is dismissed.

### F.    Breach of Fiduciary Duty

The Magistrate Judge recommends that Defendants' claim for breach of fiduciary duty should be dismissed because, under Kentucky and Ohio law, the relationship between a bank and a customer or a creditor and a debtor generally does not create a fiduciary duty. Moreover, the Magistrate Judge found that Defendants have not alleged "with any degree of specificity whatsoever" how the relationship between BOA and borrowers or BOA and Corporex is so extraordinary as to constitute a special relationship sufficient to create a fiduciary duty on behalf of BOA.

Defendants assert that the Report again ignored the specific factual allegations in the counterclaims supporting Defendants' claim for breach of fiduciary duty arising from BOA's disclosure of confidential leasing information provided by Defendants under the loan documents. Defendants claim that the information was provided by the borrowers so that BOA could monitor its collateral, with the understanding that it would be used solely for that purpose. Additionally, Defendants cite two Kentucky cases for the proposition that the

24

disclosure of the leasing information to Defendants' competitors constituted a breach of fiduciary duty under Kentucky law.  Defendants arguments are unpersuasive.

A fiduciary duty is defined as "a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence."  *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991) (quoting *Security Trust Co. v. Wilson*, 210 S.W.2d 336 (Ky. 1948)); *see also Groob v. KeyBank*, 843 N.E.2d 1170, 1173 (Ohio 2006) (quoting *In re Termination of Emp. of Pratt*, 321 N.E.2d 603, 609 (Ohio 1974) (A fiduciary duty is defined as a relationship "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.")).  As a general rule, banks do not owe a fiduciary duty to their customers or debtors. *Steelvest, Inc.*, 807 S.W.2d at 485; *Groob*, 843 N.E.2d at 1173.[9]  A fiduciary duty is "the highest order of duty imposed by law."  *In re Sallee v. Fort Knox Nat'l Bank, N.A.*, 286 F.3d 878, 891 (6th Cir. 2002).   "In an arms-length commercial transaction, where each party is assumed to be protecting its own interest, no such duty arises."  *Snow Pallet, Inc. v. Monticello Banking Co.*, --- S.W.3d ----, 2012 WL 1370878, at *4 (Ky. Ct. App. Apr. 20, 2012) (citing *In re Sallee*, 286 F.3d at 894).

In 2002, the Sixth Circuit noted that there were only two published cases in Kentucky where courts have found a fiduciary relationship to exist between a bank and a borrower: *Steelvest Inc. v. Scansteel* and *Henkin, Inc. v. Berea Bank & Trust Co.  In re Sallee v. Fort Knox Nat'l Bank, N.A.*, 286 F.3D 878, 893 (6th Cir. 2002) (citing *Steelvest, Inc.*, 807 S.W.2d

---

[9] In addition, Ohio Revised Code 1109.15(E) expressly provides that unless otherwise agreed in writing, the relationship between a bank and a debtor does not create a fiduciary relationship.

476 and *Henkin, Inc. v. Berea Bank & Trust Co.*, 566 S.W.2d 420 (Ky. Ct. App. 1978)).  It is upon these two cases that Defendants rely.

In analyzing these two cases, the Sixth Circuit emphasized that, in both cases, the bank profited at the borrower's expense from confidential information received from the borrower.  *Id.* at 893.  In *Steelvest*, the bank utilized the borrower's confidential business plans to assist one of the borrower's competitors generate new business for the bank.  *Id.* (citing *Steelvest, Inc.*, 807 S.W.2d at 485-86).  Likewise, in *Henkin*, the borrower disclosed confidential information to the bank for the sole purpose of obtaining a loan to pay off a promissory note.  *Henkin*, 566 S.W2d at 422.  The bank immediately used that information for its own benefit by purchasing the borrower's note at a discount from the original lender. *Id.*  Even more egregious, when the borrower was a few days late on its first payment to the bank, it accelerated all future payments and commenced foreclosure proceedings.  *Id.* The Sixth Circuit noted that "[f]iduciary relationships arise when circumstances and the relationship of the parties show the parties understood and agree that confidence is reposed by one party and trust accepted by the other ... [and] must evidence circumstances showing both parties agreed that one party would be acting in the interest of the other."  *In re Sallee*, 286 F.3d at 893.

In the present case, Defendants fail  to allege any facts supporting the existence of a special relationship between BOA and the borrowers/guarantor that would create a fiduciary duty on behalf of the bank.  Although Defendants claim in their objections that the leasing information was provided by the borrowers so that BOA could monitor its collateral, with the understanding that it would be used solely for that purpose, these facts were never alleged in the amended counterclaims.  Moreover, "[a] bank's committing to keep a

26

customer's information confidential does not create an obligation to act only in its customer's best interest, even to its own detriment, which is what a fiduciary relationship requires." *Groob*, 843 N.E.2d at 1175. As stated above, a bank does not owe a fiduciary duty to a borrower unless the parties agree to a special repose or trust. *In re Sallee*, 286 F.3d at 893; *Groob*, 843 N.E.2d at 1175.

Defendants also fail to allege that BOA benefitted from the alleged disclosure of confidential leasing information to third-party brokers. In a very recent case, the Kentucky Court of Appeals agreed with the Sixth Circuit's interpretation of Kentucky case law and found that where the borrower has not alleged that the bank profited from any confidence it gained through the borrower, a fiduciary duty did not exist on behalf of the bank. *See Snow Pallet, Inc.*, 2012 WL 1370878, at *3-4. Accordingly, Defendants objections are overruled, and their breach of fiduciary duty claim is dismissed.

### G.   Motion for Leave to Amend

After BOA filed its motion to dismiss Defendants' Amended Counterclaims, Defendants filed a Motion for Leave to File Second Amended Counterclaims (Doc. # 40) pursuant to Rule 15(a). In their motion, Defendants seek to add a cause of action for breach of contract due to Plaintiffs' failure to provide Defendants the opportunity to exercise the right of first refusal to purchase the CPX Olympic and CPX Tampa promissory notes. The proposed Second Amended Counterclaims also clarifies which counterclaims are against which Plaintiff and whether as counterclaim, affirmative defense or both. Section 8.9 of the relevant promissory notes, provides in relevant part:

> [BOA] agrees that in the event that it determines to assign or sell the Note ...
> to any person or entity not affiliated with [BOA], [BOA] shall, *provided Borrower is not then in default under this Note or any of the other Loan*

27

> *Documents*, allow Borrower or Borrower's affiliates a right of first refusal to purchase same, which right of refusal must be exercised and completed within thirty (30) days of the date Lender provides Borrower with written notice of the terms and conditions of a proposed assignment or sale .

(Doc. # 1-1, at 14, 53) (emphasis added).

The Magistrate Judge recommends that Defendants' Motion for Leave to File Second Amended Counterclaims be denied because the proposed additional claim is also subject to dismissal.  First, the Magistrate Judge noted that although CPX Tampa is not a party to this case, Defendants seek to recover damages from BOA and SMA based upon their failure to comply with the right of first refusal clause as it pertains to both CPX Olympic and CPX Tampa.  Defendants have failed to show why they should be permitted to raise a breach of contract claim on behalf of a non-party.  Additionally, the Magistrate Judge concluded that at the time BOA determined to sell the notes, i.e., when it came to terms with a purchaser–in this case, September 2011–, CPX Tampa and CPX Olympic were already in default as they failed to repay the notes on their maturity deadlines of February 1, 2011.  Therefore, he determined that the Defendants were not entitled to exercise their rights of first refusal.

Defendants argue that the R&R misconstrued the right of first refusal clause when it concluded that "a sale can only be consummated once all parties agree to all material terms, so the Bank could only really have determined to sell the note once it came to terms with a purchaser."  (Doc. # 65, at 21 n.11).  Defendants claim that this is directly contrary to the specific language of the provision, according to which borrowers must exercise their right of first refusal "within thirty (30) days of the date Lender provides Borrower with written notice of the terms and conditions of a *proposed* assignment or sale."  (Doc. # 70, at 19-20)

28

(emphasis added).  Defendants contend that the only reasonable reading of the entire right of first refusal clause is that: (1) the borrowers' rights to buy the loans arose at the time BOA determined to sell the loans, i.e., made the decision that it was going to sell the loans; and (2) the borrowers were then allowed to exercise that right within thirty days after formal notice from BOA of the terms and conditions BOA had *proposed* for such a sale.  Thus, both trigger the right of first refusal–the determination by BOA to sell the loan and within thirty days of BOA's notice of terms and conditions of a proposed sale.  Defendants claim that they have set forth factual allegations that, as of August 2010, BOA had determined to sell the loans when none of the three loans were in default and therefore were entitled to their rights of first refusal at that time, despite the fact that they could not exercise that right until BOA provided them with written notice of the terms and conditions of a proposed sale.

### 1.    Standard of Review

Federal Rule of Civil Procedure 15(a)(2) requires courts to "freely give leave when justice so requires."  "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" *Carson v. United States Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In reviewing a Rule 12(b)(6) motion to dismiss, this Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [his] factual allegations as true.  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted).  The Court, however, is not bound to accept as true unwarranted factual inferences, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), or legal conclusions unsupported by well-pleaded facts.  *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir. 1990).

To survive a motion to dismiss, the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, but it must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  To satisfy this standard, the complaint must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

### 2.    Futility

As an initial matter, the Court agrees with the Magistrate Judge's determination that Defendants cannot assert a breach of contract claim on behalf of a non-party, i.e., CPX Tampa.  Moreover, the proposed breach of contract claim for right of first refusal does not assert a cause of action relating to the CPX Madison property, as that property was not

sold to SMA.  Accordingly, the proposed amendment only applies to the CPX Olympic property which was sold to SMA in September 2011.

In order to determine whether Defendants' proposed amendment is futile, the Court must interpret what the language of the promissory note– "in the event [BOA] *determines* to assign or sell the Note"–actually means.  Defendants argue that the right of first refusal first arose when BOA decided to sell the loan and began marketing the loan to potential buyers in August 2010.  Further, they assert that the right could then be exercised within thirty (30) days of being provided with written notice of the terms and conditions of a proposed sale.  On the other hand, BOA claims that the right could only arise when it had proposed terms of sale to a particular buyer.  As stated above, the Magistrate Judge agreed with BOA's interpretation, concluding that BOA could have only determined to sell the note once it came to terms with a purchaser.  The Court disagrees.

It is well settled that the construction of a written contract is a matter of law to be decided by the court.  *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992) (citation omitted); *Beasley v. Monoko, Inc.*, 958 N.E.2d 1003, 1011 (Ohio Ct. App. 2011) (citation omitted).  If the parties to the contract dispute the meaning of certain language, the court must first look to the four corners of the agreement to determine whether an ambiguity exists.  *Beasley*, 958 N.E.2d at 1012 (citation omitted).  If any ambiguities exist, the contract will be construed against its drafter.  *Id.*  However, in the absence of any ambiguities, the terms will be enforced as written.  *McMullin v. McMullin*, 338 S.W.3d 315, 320 (Ky. Ct. App. 2011) (citing *Whitlow v. Whitlow*, 267 S.W.2d 739, 740 (Ky. 1954)).

31

In the instant case, no ambiguity exists in Section 8.9 of the CPX Olympic promissory note.  It states that: "[BOA] agrees that in the event that it *determines* to assign or sell the Note ..., [BOA] shall, provided Borrower is not then in default under this Note or any of the other Loan Documents, allow Borrower or Borrower's affiliates a right of first refusal to purchase same ... ."  (Doc. # 1-1, at 53) (emphasis added).  The plain meaning of the word "determines" is clear and unambiguous.  Merriam-Webster's Dictionary defines "determine" as "to come to a decision."  *Merriam-Webster Dictionary*, available online at http://www.merriam-webster.com/dictionary/determine.  Clearly, BOA could first decide to sell the CPX Olympic loan before any actual sale was agreed to or took place.  The situation is analogous to a homeowner who desires to sell his house.  First, the homeowner *determines* to sell the house, and then he will put the house for sale on the market in order to find a buyer.  Thus, the plain meaning of the term "determines" in the CPX Olympic promissory note simply means whenever BOA made a decision to sell the note.

Moreover, contrary to BOA's assertion, the second clause of the provision that states the "right of refusal must be exercised and completed within thirty (30) days of the date Lender provides Borrower with written notice of the terms and conditions of a proposed assignment or sale" does not mean that the decision to sell can only be made once BOA received an offer to purchase the note.  The provision has two separate and distinct parts.  First, it dictates when the right of refusal arises, i.e., when BOA determines to sell the loan, provided CPX Olympic is not then in default.  Then, it provides when that right can be exercised, i.e., within thirty (30) days of the date BOA gives CPX Olympic written notice of the terms and conditions of a proposed sale.  Therefore, the plain meaning of the promissory note specifies that, as long as CPX Olympic was not in default at the

32

time, the right of refusal arose whenever BOA first made the decision to sell the note, and BOA was in breach of that provision if it never provided CPX Olympic the opportunity to exercise that right.

BOA argues that, even if the Court accepted Defendants' interpretation of the contract, Defendants motion for leave to amend should still be denied because Defendants have not alleged any claim for a breach of the right of first refusal. While Defendants have *argued* that BOA determined to sell the loans as early as August 2010, they have not pled this fact. A closer look at Defendants' allegations is necessary to address this argument.

Defendants allege that in August 2010, BOA "was interested in the cash flow from the Olympic property being available to use as security ... and as an inducement for a hedge fund to buy a portfolio of loans of which Olympic would be a part." (Doc. # 41-1, at ¶ 36). Because of this, Defendants assert that BOA told Corporex and CPX Olympic to forego pursuing a proposal to refinance the CPX Olympic loan with another lender. (*Id.*). Defendants also allege that BOA "never intended to extend the loans, but instead, notwithstanding its promises to Borrowers and Corporex Realty, acted to keep the existing, imminent maturity dates in order to position the loans for sale to a buyer who would likely then push to wrest the properties from the Borrowers." (*Id.* at ¶ 35). Moreover, Defendants claim that "at the very time [BOA] was negotiating with Defendants[] regarding extending the terms of the loans, it was actively marketing the loans to hedge funds at a discount." (*Id.* at ¶ 95). Accordingly, Defendants allege that BOA breached Section 8.9 of the CPX Olympic promissory note by failing to provide CPX Olympic the opportunity to exercise its right of first refusal to purchase the discounted note that BOA sold to SMA. (*Id.* at ¶¶ 96, 102).

33

Although Defendants never use the magic word "determined" in their allegations, it is clear that Defendants have alleged sufficient facts to state a claim for a breach of the right of first refusal.  If accepted as true, Defendants' allegations show that in August 2010, BOA made an intentional decision to sell the CPX Olympic loan and, in fact, began marketing the loan to a hedge fund at that time.  Therefore, pursuant to the terms of the promissory note, the right of first refusal arose in August 2010, prior to CPX Olympic's default.  Because BOA never provided CPX Olympic the opportunity to exercise that right before selling the loan to SMA, Defendants have stated a claim for breach of contract.

Finally, at oral argument, counsel for SMA argued that CPX Olympic is barred from bringing a breach of contract claim because they waived all claims in the October 29, 2010 Modification Agreement to the CPX Olympic note.  (Doc. # 1-1, at 66).  This argument is misplaced.  The release language in the modification agreement provides that CPX Olympic and Corporex "hereby release and waive all claims and/or defenses they now or hereafter may have against [BOA] ... on account of any occurrence relating to the Loan, the Loan Documents, and/or the Property which accrued prior to the date hereof." (*Id.*).  Thus, the waiver only applies to claims that have accrued as of October 29, 2010.  Any claim for a breach of the right of refusal had not accrued as of October 29, 2010 because BOA never provided CPX Olympic an opportunity to exercise that right.  Accordingly, the proposed amendment is not futile, and Defendants' Motion for Leave to File Second Amended Counterclaims is granted.

One final matter deserves brief comment.  The proposed Second Amended Counterclaims are identical to the Amended Counterclaims except for the addition of Count VI (Breach of Contract/Right of First Refusal) and clarification of which counterclaims are

against which Plaintiff and whether as counterclaim, affirmative defense or both. Accordingly, the Court's adjudication of BOA's motion to dismiss regarding Counts I-IV applies to the Second Amended Counterclaims.  In addition to Count VI, Counts I and II will be allowed to proceed to discovery, and Counts III and IV will be dismissed.

### III.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)   Defendants' Objections to the Magistrate Judge's Report and Recommendation (Doc. # 70) are hereby **SUSTAINED IN PART** and **OVERRULED IN PART**;

(2)   The Magistrate Judge's Report and Recommendation (Doc. # 65) is hereby **GRANTED IN PART** and **DENIED IN PART**;

(3)   Plaintiff's Motion to Dismiss Amended Counterclaims (Doc. # 27) is hereby **GRANTED IN PART** and **DENIED IN PART**;

(4)   Defendants' Motion for Leave to File Second Amended Counterclaims (Doc. # 40) is hereby **GRANTED**; and

(5)   Defendants' Motion to Strike (Doc. # 67) is **DENIED AS MOOT**.

This 19th day of June, 2012.



Signed By:

_David L. Bunning_   *DB*

United States District Judge

G:\DATA\Opinions\Covington\2012\12-23 MOO grant and deny in part R&R.wpd