# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT COVINGTON

**CIVIL ACTION NO. 11-168-DLB-JGW**

| | |
|---|---|
| **BANK OF AMERICA, N.A.** | **PLAINTIFF** |
| and | |
| **THE DOMAINE DE LA RIVE CONDOMINIUM COUNCIL OF CO-OWNERS, INC.** | **INTERVENOR PLAINTIFF** |
| vs. | |
| **CPX MADISON PLACE OFFICE, L.L.C.** | **DEFENDANT** |

**AND**

**CIVIL ACTION NO. 12-23-DLB-JGW**

| | |
|---|---|
| **BANK OF AMERICA, N.A., et al.** | **PLAINTIFFS** |
| vs. | |
| **CORPOREX REALTY & INVESTMENT, LLC, et al.** | **DEFENDANTS** |

## MEMORANDUM ORDER

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Bank of America, N.A. (the "Bank") brings this foreclosure action against Defendant CPX Madison Place Office, LLC ("Madison Place"), as a result of Defendant allegedly defaulting on loan obligations owed to the Bank. This matter is presently before the Court on the Bank's objection to the Magistrate Judge's Order granting Co-Receiver Colliers International, Inc. authority to borrow up to $2,000,000.00 and issue primed

1

receiver's certificates to secure the loans. (Doc. # 151)[1]. The objection has been fully briefed (Docs. # 153, 154, 155), and is ripe for review.

## I. BACKGROUND

On July 9, 2012, the presiding Magistrate Judge appointed Colliers International, Inc. as Co-Receiver for the leasehold interest of CPX Madison Place Office, LLC in the property located at 100 East River Center Boulevard, Covington. (Doc. # 75). Colliers was ordered to serve as receiver with respect to all aspects of property management and operations, and was granted "all necessary powers to operate and otherwise manage the Mortgaged Property." (*Id.* at ¶ 5).

On July 22, 2013, Colliers moved the Court for authority to (1) borrow funds necessary to fulfill the court-ordered obligations and (2) secure the loan by issuing receiver certificates that are senior in priority to the Bank's mortgage and security interest. (Doc. # 114). The motion was spurred by the fact that Colliers no longer had sufficient funds available to fulfill obligations imposed by the Court; approximately $15,476.00 remained available in the receiver's checking account as of July 19, 2013. Colliers did not expect its situation to improve in the future, as it expected to collect approximately $8,500.00 per month in revenue, while expending approximately $55,000.00 each month. Because of its poor financial condition, Colliers ultimately sought authority to borrow up to $2,000,000.00 and issue receiver's certificates to secure the loans.

---

[1] All citations to the record reference pleadings in 2:11-cv-168-DLB-JGW.

The Bank opposed the motion on a number of grounds. (Doc. # 125).[2] Based on the current posture of the case, only one of the arguments in opposition remains relevant. The Bank argued that, under federal and state law, a receiver's certificate may only take priority over a prior lienholder's interest if it secures funds necessary for preservation expenses. According to the Bank, Colliers failed to distinguish between preservation and operation expenses in its application for authority to issue receiver's certificates. The Bank argued that preservation expenses should be minimal, and far below the $2,000,000.00 requested. Moreover, according to the Bank, many of the forecasted annual expenses appeared excessive for a vacant building, including: $128,000.00 for security, $39,000 for janitorial services and trash collection, and $36,000 in management fees.

On August 8, 2013, the Magistrate Judge held a telephonic oral argument to consider Colliers' motion for authority to borrow funds. At the conclusion of the conference, the Magistrate Judge granted the motion without offering any oral justification for his holding. (Doc. # 145 at 33). The Magistrate Judge did not follow up his decision with a written Order. By granting the motion, the Magistrate Judge authorized Colliers to borrow up to $2,000,000.00 on a revolving and as-needed basis to pay current and arising debts, and to issue receiver's certificates to secure the debts which are senior in priority to the Bank's mortgage.

The Bank has objected to the Magistrate Judge's Order pursuant to Federal Rule of Civil Procedure 72(a) on the grounds that it was clearly erroneous and contrary to law.

---

[2] The Bank also moved to terminate the receivership (Doc. # 126) along with responding in opposition to Collier's motion. The motion to terminate was denied by the Magistrate Judge, and no objection has been raised to that Order.

(Doc. # 151). Specifically, the Bank objects "to that portion of the Order which authorizes the issuance of priming receiver's certificates to pay for expenses which are not necessary for the preservation and maintenance of the office space." (*Id.* at 3).

## II. ANALYSIS

### A. Judicial Estoppel

Before addressing the merits of the Bank's objection, the Court must address an argument raised by Madison Place that, if accepted, would foreclose the Bank's ability to challenge Collier's request to borrow funds and issue receiver's certificates. Madison Place contends that the Bank recognized from the outset that the receiver may incur a financial shortfall which would prevent it from meeting many of its court-ordered obligations. Most importantly, Madison Place asserts that the Bank initially proposed that the receiver could obtain authority to borrow additional funds and issue receiver's certificates in order to remedy this shortfall. Under principles of judicial estoppel, Madison Place argues that the Bank cannot now change its position and argue that Colliers should not be given the authority to borrow funds and issue receiver's certificates that prime pre-existing liens.

The Supreme Court has defined the rule of judicial estoppel as follows:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). This rule "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8 (2000)).

4

While the exact circumstances under which judicial estoppel may be invoked have not been articulated, the Supreme Court has found that three factors typically inform the decision of whether to apply the doctrine.

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would deprive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750-51 (quotations and internal citations omitted).

Judicial estoppel is not applicable here because the Bank has never assumed contrary and conflicting positions regarding Collier's authority to borrow funds and issue receiver's certificates. The Bank first assumed a position on this issue in its response to the Intervenor Domaine de la Rive Condominium Council of Co-Owners, Inc.'s objection to the Magistrate Judge's order appointing co-receivers. (Doc. # 85). Among the issues before the Court at the time was the issue of whether the Court should escrow all excess rents collected by Colliers to pay for future expenses. The Bank opposed escrow and instead argued that Colliers might fund future expenses by incurring new debt through the issuance of receiver's certificates. But the Bank's proposal came with an important caveat: the Bank made clear that a "priority lien can never be granted to fund ***operating*** expenses in the receivership of a private corporation." (Doc. # 85 at 15). Rather, the Bank asserted that the Court may only authorize the receiver to issue receiver's certificates that prime existing liens if it is necessary to do so to ***preserve*** the property.

5

In the Bank's opposition to Collier's motion for authority to borrow funds, the Bank continued to make the distinction between preservation/maintenance expenses and operating expenses. The Bank again asserted that "a receiver's certificate may only prime a prior lienholder on **preservation** expenses." (Doc. # 125 at 3, ¶5(A)) (emphasis added). And because "Colliers fail[ed] to distinguish between preservation and operations expenses in its application," (*Id.*), the Bank asserted that Colliers' motion must be denied in its entirety.

The Bank holds firm to the distinction between preservation/maintenance expenses and operating expenses in its objection to the Magistrate Judge's order granting Collier's authority to borrow funds and issue receiver's certificates. In fact, the crux of the Bank's present objection is that the Magistrate Judge erred as a matter of law in granting authority to borrow all funds requested without parsing through Colliers' proposed budget to determine which line-items were operating expenses and which were preservation/maintenance expenses. As the Bank states, "Colliers has been authorized to incur debt for the purpose of **operating** the office space including continuing to provide services to the condominium owners." (Doc. # 151 at 2) (emphasis added). While the Bank has backed away from generally opposing Collier's request to borrow funds, it has stayed true to its position that receiver's certificates may only prime pre-existing liens for preservation/maintenance expenses. Because Collier's position on receiver's certificates has remained consistent throughout this proceeding, judicial estoppel is inapplicable and has no force in the present case.

**B.    Merits of the Bank's objection**

The Bank argues that the Magistrate Judge's Order is clearly erroneous and

violates clearly established law. Specifically, the Bank contends that the Magistrate Judge has authorized Colliers to borrow funds and issue priming receiver's certificates to pay for operating expenses. This portion of the Order, the Bank argues, violates "black-letter federal law that priming receiver's certificates may not be issued over the objection of a secured lender to pay for operating expenses of a private corporation." (Doc. # 151 at 2).

### 1. Receiver's certificates

"A receiver's certificate is a promise to pay a definite sum from the receivership fund, and under exceptional circumstances, may be made a first lien on the receivership property." *Cox v. Snow*, 273 P. 933, 935 (Idaho 1929). The promise to pay, however, is not made personally by the receiver. *Select Theaters Corp. v. Johnson*, 145 F. Supp. 583, 593 (S.D.N.Y. 1956). Rather, the certificate represents a "debt[] of the receiver[] in [its] official capacity backed by the pledged faith of the Court that the proceeds of the property on which they were a charge, to the extent they were sufficient for that purpose, would be applied to [its] payments." *Id.*

A receiver may not issue receiver's certificates without the court's authority. *Lockport Felt Co. v. United Box Board & Paper Co.*, 70 A. 980, 984 (N.J. Ch. 1908). After all, a receiver's authority is created by the terms of the order of appointment. *Id.* As such, the receiver is not "justified in incurring any indebtedness on the faith of the property and in issuing obligations therefor, unless the act were sanctioned by the order of the proper court." *Id.*

While a court may give the receiver authority to issue receiver's certificates, those certificates are virtually useless if they are not given priority over previously existing liens on the property. Thus, the issue arises—as it has arisen here—of whether a court may

give the receiver authority to issue priming receiver's certificates and, if so, under what circumstances. The answer to both of these questions is well-settled. Courts may authorize the issuance of receiver's certificates that create a priority lien, "provided the issuance is for a proper purpose, and provided also that notice and an opportunity to be heard are given to interested parties." 16 *Fletcher Cyc. Corp.* § 7884.

What is a "proper purpose" though? The answer turns on whether the receiver has been appointed to oversee the property of a private corporation or a public utility. In the case of private corporations, the court "may authorize the issua[nce] of receivers' certificates which will displace prior liens on the property if it is necessary to do this for the *preservation* of the property, but it *cannot* operate the business nor incur any further expense to the prejudice of prior lienholders without their consent." *Montgomery Coal Corp. v. Allais*, 3 S.W.2d 180, 182 (Ky. 1928). (emphasis added). Or, as one court has summarized, "the court *cannot* authorize the issue of receiver's certificates for the purpose of *improving, adding to, or carrying on the business* of the company, without first having the consent of creditors whose liens would be affected thereby." *Int'l Trust Co. v. Decker Bros.*, 152 F. 78, 84 (9th Cir. 1907) (emphasis added). However, "[w]here a receivership involves a railroad, and possibly other public utilities, receiver's certificates having priority over existing secured claims have been used for preserving the property in receivership or for carrying on and operating the business of the railroad. The paramount public interest, and the protection of the franchise are considered of such importance as to warrant the issuance of certificates even though this involves the displacement of vested rights." *Cox,* 273 P. at 935.

The law pertaining to private corporations—and not public utilities—is relevant here. The Court recognizes that Defendant CPX Madison Place Office, LLC, is a limited liability company, not a corporation. However, like a private corporation, a limited liability company is not publicly traded, nor does this particular LLC provide a public utility. Accordingly, there is no great public interest that warrants the Court to authorize the issuance of receivers' certificates to carry on the business of this LLC. Instead, without the Bank's consent, the Court may only authorize Colliers to issue priming receiver's certificates for preservation expenses.

### 2. Preservation expenses

According to the Bank, "the [Magistrate Judge's] Order should be set aside because a significant portion of the expenses which have been approved are not necessary for the preservation and maintenance of the office space." (Doc. # 151 at 6). The Bank finds support for this assertion in an apparent concession made by Madison Place's counsel during oral argument before the Magistrate Judge. Counsel asked the Magistrate Judge to refer to a projected annual budget attached to Colliers' motion to borrow funds (Doc. # 114-2), and stated: "If you look at the budget . . . , **most** of the expenses that are listed on that [budget] benefit the mortgaged property, [including] the insurance, electricity, fire suppression, those all benefit the mortgaged property." (Doc. # 145 at 12) (emphasis added). By stating that "most" of the expenses benefit Madison Place, the Bank argues that Madison Place's counsel conceded that other forecasted expenses on the budget benefit the Intervenor Condo Owners.

The Court finds this concession to be compelling. The Magistrate Judge permitted Colliers to borrow the full amount of funds sought—$2,000,000.00—and issue priming

9

receiver's certificates on the same. However, Madison Place acknowledges that "most" and not "all" of the proposed expenses benefit the property. If "most" of the proposed expenses "benefit" the property, it certainly cannot be said that "all" of the expenses are necessary to *preserve* the property. Thus, the Magistrate Judge's blanket ruling authorizing the requested $2,000,000.00 was contrary to clearly established law that the Court may only "authorize the issua[nce] of receivers' certificates which will displace prior liens on the property if it is necessary to do this for the *preservation* of the property." *Montgomery Coal Corp.,* 3 S.W.2d at 182. And because it was contrary to clearly established law, the Order must be set aside.

However, this conclusion does not finally resolve the disagreement between the parties. Colliers has sought authority to borrow $2,000,000.00 and issue priming receiver's certificates on the same. As the Court has just explained, this request cannot be granted in full. On the other hand, the Bank apparently acknowledges that at least some of the forecasted expenses are necessary to preserve the property. (*See* Doc. # 125 at 3) ("Preservation expenses for the vacant office space should be minimal."). In other words, the parties agree that an amount greater than zero but less than $2,000,000.00 is necessary to preserve the property.

Unfortunately, the record is insufficient for the Court to determine which of Colliers' forecasted expenses are necessary for preservation/maintenance of the property and which are simply operating expenses. Colliers has failed to explain how it plans to spend $2,000,000.00. At best, Colliers has attached a forecasted budget for the next year, including monthly receipts and expenses from July 2013 to June 2014. But that budget—if accepted as true—shows a net deficit of $652,510.00 for the year, plus an estimated

property tax bill of $210,000.00 and an open payable of $125,609.00. In sum, it appears that Colliers will have a deficit of approximately $988,119.00 over the next year, which is substantially less than the $2,000,000.00 requested.

Even if the Court were to accept that Colliers will have a deficit of $988,119.00 over the next year, the forecasted budget provides minimal assistance in determining which expenses are for preservation and which are for operating expenses. Colliers' budget includes eighteen line items of expenses, ranging from "electric (includes vacant)" to "supervision & accounting." (Doc. # 114-2). While the line items were apparently included to aid the Court in evaluating the estimated expenses, the problem is that many of the line item descriptions are so vague that the Court cannot determine whether the line item is for preservation or operating expenses. For example, the Court cannot determine what is included in "supervision & accounting" expenses. Even the description "maintenance labor," while related to maintenance on its face, does not necessarily include preservation expenses. The description "electric (includes vacant)" is also unhelpful because the Court cannot determine whether that electricity is being used solely to preserve the property or, possibly, to benefit the Intervenor. It is questionable, though, that $15,269.00-worth of electricity is necessary to preserve the vacant property in April 2014, for instance.

Reviewing the budget with a fine tooth comb is both appropriate and necessary in view of the potential financial loss the Bank will incur if its secured interest in the property loses priority to new creditors. This approach is also required by law. As the District Court for the Middle District of Tennessee has stated, "[t]he authority to disturb existing liens for the purpose of securing receivers' certificates should . . . be exercised with great caution and carried no further than actually necessary to attain the desired result." *Mercantile Trust*

*Co. v. Tennessee Cent. R. Co.*, 291 F. 462, 468 (M.D. Tenn. 1921).

In exercising the "great care" required, the Court finds that it needs additional information to determine the extent of the preservation expenses. The Court will, therefore, order additional briefing by the parties as more fully set forth below. In ordering the additional briefing, the Court is mindful that Colliers' motion presents a time-sensitive matter. The Court would note, however, that Colliers must have anticipated that this financial shortfall was forthcoming. Yet Colliers filed the motion to borrow funds on July 22, 2013 and explained within that motion that "at the end of July, [it] will be unable to meet its obligations." (Doc. # 114 at 8). By waiting so long to file its motion, Colliers prevented the parties from fully developing the record and hampered the Court's ability to carefully consider such a significant request. In short, while Colliers' motion is time-sensitive, it must also be given due consideration.

### III. CONCLUSION

Accordingly, for the reasons set forth herein, **IT IS ORDERED** as follows:

(1) Bank of America, N.A.'s objection (Doc. # 151) to the Magistrate Judge's Order dated August 8, 2013 Granting Motion of Co-Receiver Colliers International, Inc. for Leave to Borrow Funds is hereby **SUSTAINED**;

(2) The Magistrate Judge's Order authorizing Co-Receiver Colliers International, Inc. to borrow up to two-million dollars and issue priming receivers' certificates on the same (Doc. # 136) is hereby **SET ASIDE**;

(3) **Not later than September 18, 2013**, Colliers shall **submit** a detailed description of each line item on its "Revised Minimalized Operating Expense Estimate." (Doc. # 114-2). That description should include an explanation of how each service or

utility is used in the now-vacant office space located at 100 East River Center Boulevard, Covington, Kentucky, as well as an explanation of how Colliers estimated each expense. Any response from Bank of America, N.A. shall be filed **on or before September 24, 2013**, at which time Colliers' Motion for Approval to Borrow the Necessary Funds to Fulfill Obligations Imposed by Order Appointing Co-Receivers and Authorize the Receiver to Issue Receiver Certificates that are Senior in Priority to Plaintiff's Mortgage and Security Interest (Doc. # 114) will be submitted for prompt decision; and

(4) With the exception of the supplemental briefing ordered herein on Colliers' motion to borrow funds, and the Court's prompt consideration of that motion, this matter is hereby **STAYED** pending the Court-ordered mediation presently scheduled for November 13, 2013.

This 12th day of September, 2013.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\ORDERS\Cov11\11-168 Order sustaining objection to MJ's order re authority to borrow funds.wpd